IN THE MATTER OF THE ESTATE OF LAU AH
LEONG, DECEASED.

No. 2281.

ARGUED MARCH 31, 1937.                    DECIDED MAY 3, 1937.

COKE, C. J., BANKS, J., AND CIRCUIT JUDGE METZGER
IN PLACE OF PETERS, J., ABSENT.

OPINION OF THE COURT BY BANKS, J.

On the 21st day of May, 1934, the executors of what
purported to be the last will and testament of Lau Ah
Leong, who was alleged to have died in Honolulu, City and
County of Honolulu, on the 19th day of May, 1934, offered
said will for probate in the circuit court of the first judicial
circuit of Hawaii. Certain persons who claimed to be heirs-
at-law of Lau Ah Leong filed a contest of the will on several
grounds. After considering the evidence and the law on
the preliminary issue of whether the contestants were the
heirs-at-law of Lau Ah Leong and therefore entitled to
institute the contest, the trial judge decided adversely to
them and dismissed the contest. Thereupon the will was
admitted to probate. The contestants perfected an appeal
to this court. Subsequent to the appeal two of the contest-
ants withdrew from the contest leaving its further prosecu-
tion to the remaining contestant, Amoy Lau Zen.

It is alleged in the contest that Amoy Lau Zen is a

daughter of the said deceased, Lau Ah Leong, otherwise known as L. Ah Leong, and his wife, Fung Dai Kim Ah Leong; that their said mother, the said Fung Dai Kim Ah Leong, was married to the deceased, Lau Ah Leong, in Kohala, Territory of Hawaii, in the year 1884. It is also alleged that the contestant, Amoy Lau Zen, was born in September of 1887 and that she is the lawful issue and heir-at-law of said deceased, Lau Ah Leong.

It is not denied and therefore may be taken as a fact that Lau Ah Leong was the father of Amoy Lau Zen and that Fung Dai Kim was her mother. It is denied, however, that Lau Ah Leong and Fung Dai Kim were lawfully married and therefore denied that Amoy Lau Zen is the lawful issue and heir-at-law of Lau Ah Leong. It is conceded that the burden of proving her legitimacy, which depended upon the legality of a marriage between her parents, rested upon her.

Fung Dai Kim, the mother of the contestant-appellant, testified in substance as follows: She came to the Hawaiian Islands from China at the age of 17, accompanied by an older sister. The sister was given marriage papers and instructions from their mother to the effect that both were to be first wives or legal wives and not concubines. The witness was met in Honolulu by an uncle of Lau Ah Leong. She went to Kohala, on the Island of Hawaii, accompanied by an old Chinese lady and the uncle. Upon reaching Kohala the details of a marriage ceremony were arranged by a go-between. The witness's age was given to this go-between and her Chinese marriage papers were turned over by him to Lau Ah Leong. Upon the arrival of the witness at Kohala a ceremony described as follows was performed: There was a tub filled with rice, with punk or candlesticks burning, and before a tablet she and Lau Ah Leong worshipped and promised to be husband and wife. Then, according to Chinese custom, a cooked egg was broken in

half, Lau Ah Leong taking a taste and the witness taking a taste; that this ceremony took place in an open yard facing the sky before a crowd of people. After the ceremony which was on a Wednesday a feast of over forty tables continued until the following Sunday. The witness did not know whether a license to marry was obtained or not nor did she know whether a person duly authorized to perform the ceremony was present. Following the ceremony the witness lived with Lau Ah Leong as his wife and bore him many children. She was looked upon by the community in which they lived as his wife and was known as Mrs. Lau Ah Leong.

Barry S. Ulrich, attorney for contestant, testified as follows: "I went to the office of the Bureau of Vital Statistics with a view to making a certificate of a record, if any, of a license issued or marriage certificate of Fung Dai Kim and L. Ah Leong, having in mind that the marriage was claimed to have taken place in the year 1884. I made a particular search of the records for that year with this result: I found one volume which showed certain marriages performed by certain ministers. Apparently the different ministers would make reports of ceremonies that they performed. In this volume there was nothing referring to a marriage between Fung Dai Kim and L. Ah Leong. There were other volumes showing marriage licenses issued by certain agents on the Island of Hawaii. Apparently certain of those agents made reports during that year. I may say that it appeared to be the first thing in which there was anything like a volume and even they were not full records of marriages on that island. I may add that in the reports of those agents who had made reports, I found no record of any license issued to Fung Dai Kim to marry L. Ah Leong. I may say that from an examination of the records there, it appeared that records of marriages as having been celebrated showed no record of licenses issued. On the

other hand, many of the records of licenses issued showed no record of ceremony performed; from which I gathered or concluded that the records were not complete and that it was impossible to ascertain whether or not in fact a marriage license had been issued."

The above testimony falls far short of proving affirmatively that a license authorizing the marriage in question was authoritatively issued. It also falls short of proving that a marriage ceremony was performed by anyone having authority to do so. The most that can be said of the testimony of Fung Dai Kim is that it shows that a marriage ceremony was performed in accordance with Chinese custom, which included an agreement of the parties to live together as husband and wife, and that this ceremony was followed by a long period of cohabitation which resulted in the birth of several children. The most that can be said of Mr. Ulrich's testimony is that it shows he made a careful search of certain public records for the year 1884 and was unable to find in them anything referring to a marriage between Lau Ah Leong and Fung Dai Kim.

Under the law as it existed in Hawaii in 1884, the year of the alleged marriage, two things were essential to its validity: first, performance of the ceremony by a person having authority from the Minister of the Interior (Hawaii being then a Kingdom) to celebrate marriages; second, that the parties contracting a marriage have a license to marry duly obtained from an agent appointed to grant such licenses. (Comp. L. Haw., 1884, ch. XXVIII, p. 423.) Section 1283 of this chapter is as follows: "It shall not be lawful for any minister of religion of any sect whatsoever, or any other person, to perform the marriage ceremony within this Kingdom, without first obtaining from the Minister of the Interior a license to celebrate marriage." The pertinent portion of section 1 of this chapter is as follows: "It shall in no case be lawful for any persons to

marry in this Kingdom without a license for that purpose duly obtained from the agent duly appointed to grant licenses to marry."

Both of these sections are prohibitory. The one prohibits any person from performing a marriage ceremony without first obtaining from the proper authorities a license to celebrate the marriage and the other prohibits any person from marrying without a duly issued license. While it is true that in neither of these sections are informal marriages declared to be void nevertheless the effect of what is done in contravention of a prohibitive law is declared in chapter 2, section 8, of the Compiled Laws above referred to. This section is as follows: "Whatever is done in contravention of a prohibitory law is void, although the nullity be not formally directed." The application of this section to a marriage which took place without a license is fully discussed in *Parke* v. *Parke,* 25 Haw. 397. It was there held that such a marriage was absolutely void. There is nothing in the evidence which affirmatively supports the legality of the marriage now in question.

It is contended by the appellant-contestant that the lack of this affirmative proof is supplied by a presumption of law. More specifically the contention is that upon proof of the celebration of a ceremonial marriage at which the parties agree to live together as husband and wife and which is followed by an actual living together publicly in that relation for a long period of time during which children are born to them, the law will presume, in the absence of countervailing proof, that all of the prerequisites to a valid marriage in the jurisdiction where it occurred were complied with.

The rule of law supporting this contention has been so often judicially announced that it may be considered as firmly established. The presumption, however, is not a conclusive one but is rebuttable. It is contended by the

appellee that in the instant case it is rebutted and completely destroyed by a subsequent marriage between Lau Ah Leong and another woman, Ho Ah Keau, in which all of the requisites of a valid and legal marriage under the laws of Hawaii were complied with. In support of this contention a marriage certificate issued by the registrar general of the bureau of vital statistics of the Territory of Hawaii was introduced in evidence. It appears from this marriage certificate that on May 25, 1891, a marriage license was issued by C. T. Gulich to Lew Ah Leong and Ah Keau and that on the same date the marriage ceremony was performed at Honolulu by C. M. Hyde.

The identity of the Lew Ah Leong mentioned in the certificate with the Lau Ah Leong who went through a ceremonial marriage with Fung Dai Kim at Kohala in 1884 is undisputed. It is also undisputed that Lau Ah Leong and Ah Keau continued as husband and wife from the time of the marriage to the date of Lau Ah Leong's death.

The validity of both of these marriages cannot be legally recognized. The validity of the first rests upon a mere legal presumption. The validity of the second rests upon facts that were affirmatively proven. Under these circumstances the one affirmatively proven must prevail over the one presumptively proven. The legitimacy of Amoy Lau Zen, the contestant, depends upon proof of the legality of the first marriage and there being no proof of this fact other than a legal presumption, which is destroyed by affirmative proof of the legality of the second marriage, the conclusion that Amoy Lau Zen is not the heir-at-law of Lau Ah Leong and therefore not entitled to contest the will is inescapable.

The decree appealed from is affirmed.

*S. C. Doo* (also on the briefs) for appellant.

*C. A. Gregory* (*Smith, Wild, Beebe & Cades* on the briefs) for appellees.